UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIJIE ZUO (A-Number: 245-641-474),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY DETENTION FACILITY, *et al.*,<br>Respondents. | Case No. 1:26-cv-6467-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

On or about December 20, 2023, Border Patrol agents encountered petitioner Lijie Zuo at the southern border, served him with a notice to appear in immigration court, and released him into the United States on an order of recognizance pending an immigration court hearing. On January 6, 2026, petitioner reported to ICE for a scheduled check-in and was taken into immigration custody. Petitioner, proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241 for his release. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

On December 20, 2023, petitioner entered the United States without permission at the southern border. ECF No. 7-1 at 3. Border Patrol agents encountered him, issued him a notice to appear for immigration court, and released him into the United States with an order of recognizance. *Id.* at 3, 7. Before releasing him, the agents ran background checks on petitioner,

which revealed no criminal history. *Id.* at 5. Agents determined that petitioner was not a threat to national security, border security, or public safety. *Id.* at 6.

After his release into the United States, petitioner filed an asylum petition. *See* ECF No. 7-3 at 4. Petitioner "worked to support himself, paid taxes, and lived openly and peacefully in the community." ECF No. 1 at 6.

On October 25, 2025, local police arrested petitioner for driving under the influence. ECF No. 7-1 at 3; ECF No. 7-2 at 5. Charges were never filed. *See* ECF No. 1 at 7; ECF No. 7-2 at 5. Petitioner remained out of ICE custody until January 6, 2026, when he appeared at the ICE office for a scheduled check-in and was re-detained. ECF No. 1 at 6-7; ECF No. 7-1 at 2. ICE did not provide petitioner with a warrant or any notification of the reason for his re-detention. ECF No. 1 at 7. Although Mandarin is his first language, ICE did not provide him an interpreter during the re-detention. *Id.* Immigration authorities did not provide petitioner any opportunity to contest his re-detention prior to being taken into custody. *Id.*

On July 2, 2026, the immigration court ordered petitioner removed.[1] ECF No. 7-3 at 3-10. On July 16, 2026, after six months in custody, petitioner received a bond hearing in immigration court.[2] ECF No. 7-3 at 1. The immigration judge denied bond based on a determination that petitioner was a danger and a flight risk. *Id.* The immigration court pretermitted and denied petitioner's applications for asylum and other forms of humanitarian relief. *Id.* at 9. According to the automated immigration case information site, petitioner appealed that order to the Board of Immigration Appeals ("BIA"), and accordingly, his removal order is not yet final. *See* https://acis.eoir.justice.gov/en/ (last checked September 22, 2026).

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of

---

[1] Although this removal order is mistakenly dated July 2, 2025, the electronic signature of the immigration judge confirms that it was issued in 2026. *See* ECF No. 7-3 at 9.

[2] As discussed below, it is not clear under what authority the immigration court held the bond hearing.

that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention by ICE without a pre-deprivation hearing violates due process.[3] ECF No. 1 at 7. Respondents argue that they complied with due process because petitioner was detained under 8 U.S.C. § 1226(a) and received a bond hearing in immigration court six months later. ECF No. 7 at 1. They further argue that petitioner's due process claim should be denied for lack of administrative exhaustion, because petitioner did not appeal the immigration judge's bond denial to the BIA. *Id.* at 2. Petitioner requests that any exhaustion requirement be waived because the BIA is not empowered to determine the constitutionality of petitioner's re-detention. ECF No. 8 at 1.

The court first considers the issue of administrative exhaustion. Section 2241 does not require exhaustion of administrative remedies prior to filing a habeas petition. *Compare* 28 U.S.C. § 2241 *with* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state court remedies). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted). However, the prudential exhaustion requirement may be waived if

[3] Petitioner also claims that his detention violates the Immigration and Nationality Act. ECF No. 7 at 11-12. Because I recommend that the petition be granted on due process grounds, I do not consider this statutory claim.

"administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Petitioner received a bond hearing in immigration court. ECF No. 7-3 at 1-2. It is not apparent on what basis the immigration court held the bond hearing. The bond denial form cites 8 C.F.R. § 1236 as the basis for the custody redetermination hearing, but this regulation only applies to immigrants arrested upon a warrant, *see* 8 C.F.R. § 1236(b), and respondents do not dispute petitioner's contention that he was never provided a warrant as required by 8 U.S.C. § 1226(a). *See* ECF No. 1 at 7, 12. Respondents indicate that petitioner received a bond hearing under 8 U.S.C. § 1226(a), *see* ECF No. 7 at 1, but there is no evidence in the record that ICE detained petitioner under that section, as he was never provided the arrest warrant required for a section 1226 arrest. *See* ECF No. 1 at 7; ECF No. 7-1 at 2-3.

Meanwhile, the bond denial order contains the notation "*Rodriguez v. Robbins*," suggesting that petitioner was granted a hearing as a member of the *Rodriguez* class, which requires bond hearings for any immigrant detained over six months, whether they are taken into custody under section 1225 or section 1226. *See* ECF No 7-3 at 2; *see also* ECF No. 8 at 2 (arguing that petitioner received a "180-day" hearing under *Rodriguez*); *Rodriguez v. Holder*, No. 07-cv-3239-TJH-RNB, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Rodriguez v. Marin*, No. 07-cv-3239-TJH-RNB, 2020 WL 13348414, at *1 (C.D. Cal. Mar. 9, 2020) (affirming that the preliminary injunction in the *Rodriguez* class action continues to apply to immigrants detained by ICE in the Central District of California).

Petitioner did not appeal the bond denial to the BIA, but courts have held that the appeal of *Rodriguez* bond denials to the BIA would be futile and have excused the failure to exhaust such claims. *See Espada Hernandez v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-2231-AJR, 2026 WL 1362396, at *8 (C.D. Cal. May 11, 2026); *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-cv-3007-MBK, 2026 WL 1045196, at *6 (C.D. Cal. Apr. 15, 2026); *Rendon*

*Ramos v. Blanche*, No. 5:26-cv-1749-SP, 2026 WL 2058165, at *3 (C.D. Cal. June 9, 2026); *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1114 (S.D. Cal. 2008).

Given that petitioner is challenging his re-detention on due process grounds, I find that relief from the prudential exhaustion requirement is warranted. "[A]n exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and [ICE] procedures because the BIA does not have jurisdiction to determine the constitutionality of the statutes it administers." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (cleaned up); *see also Matter of Fede*, 20 I. & N. Dec. 35 (BIA 1989) (explaining why neither an immigration judge nor the BIA have the legal authority to consider constitutional challenges to the immigration regulations they administer). I find that, in these circumstances, an appeal to the BIA would have been futile. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 895 (9th Cir. 2021) (quoting *Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021) ("Futility is a traditional exception to judicially created exhaustion requirements because '[i]t makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested.'"). Thus, as the administrative remedies are not adequate to address petitioner's due process challenge to his re-detention, exhaustion should be waived. *See Zhou v. Warden, Cal. City Immigr. Processing Ctr.*, No. 1:26-cv-6527-DAD-CSK, 2026 WL 2445606, at *1 (E.D. Cal. Aug. 20, 2026) (waiving exhaustion for a petitioner who had not requested a hearing under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999) before challenging his re-detention on constitutional grounds); *Gutierrez Romo v. Chestnut*, No. 1:26-cv-3449-KES-FJS (HC), 2026 WL 2254385, at *4 n.4 (E.D. Cal. Aug. 4, 2026) (same); *see also Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *2 (E.D. Cal. June 25, 2026) (concluding that prudential exhaustion factors weighed against imposing exhaustion where the petitioner brought a procedural due process claim).

Thus, I turn to the due process issue raised by petitioner. Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky*

*Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Respondents concede that petitioner "has a liberty interest." ECF No. 7 at 2. I agree. DHS released petitioner into the United States on his own recognizance on December 20, 2023. ECF No. 7-1 at 3, 7. After his release, petitioner filed an asylum petition. *See* ECF No. 7-3 at 4. Petitioner "worked to support himself, paid taxes, and lived openly and peacefully in the community." ECF No. 1 at 6. Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).

I agree with respondents that petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See* *Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993

(9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the two years that he was at liberty in the United States on his own recognizance. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner permission into the United States, respondents necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Border Patrol agents ran criminal history checks on petitioner, which revealed no criminal history. ECF No. 7-1 at 5. They thus determined that petitioner was not a threat to national security, border security, or public safety. *Id.* at 6. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting

*Zadvydas*, 533 U.S. at 690).

Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. Accordingly, the probable value of additional procedural safeguards is high. *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents have not provided any information about the additional burden it would bear as a result of being required to provide a constitutionally adequate pre-deprivation hearing. *See* ECF No. 7.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's detention without a pre-deprivation hearing violated his due process rights. Given this finding, the court must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 13. Respondents argue that petitioner has already received the bond hearing to which he is entitled. ECF No. 7 at 2-3.

Here, petitioner was afforded a bond hearing in immigration court, but there is insufficient evidence that it was a constitutionally adequate one that placed the burden of proof on the government by clear and convincing evidence.[4] *See Martinez v. Clark*, 124 F.4th 775, 780 (9th

---

[4] Respondents assert that petitioner received a bond hearing under section 1226(a), which requires him to prove that he is neither a flight risk nor a danger. *See Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (BIA 2018) ("An alien in a custody determination under . . . 8 U.S.C. § 1226(a), must establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger. . . ."). However, a bond hearing under *Rodriguez*, 715 F.3d at 1131, requires that the burden of proof be placed on the government. The bond order states that the immigration court "considered all arguments and evidence presented from both sides" and is silent regarding

Cir. 2024) (procedural due process requires a bond hearing where the government bears the burden to prove by clear and convincing evidence that petitioner is a danger or a flight risk); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases).

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). I do not find, and respondents do not argue, that there was any necessity of quick action, or that providing a pre-deprivation hearing was impractical. Although it appears that petitioner was arrested in October 2025 for driving under the influence, charges were never filed, and petitioner remained out of custody on his own recognizance for two additional months.[5] *See* ECF No. 1 at 7; ECF No. 7-1 at 3; ECF No. 7-2 at

---

who bore the burden of proof. ECF No. 7-3 at 1. Given the government's assertion that the hearing was held under 8 U.S.C. § 1226(a), I cannot find that it was constitutionally compliant.

[5] In analogous situations, courts have held that while an arrest for certain crimes subjects an individual to mandatory detention under 8 U.S.C. § 1226(c), such detention becomes unconstitutional after prosecutors decline to bring charges stemming from the arrest. *See E.C. v. Noem*, No. 2:25-cv-1789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) ("And if § 1226(c) mandates [p]etitioner's detention, with no regard for the fact that he was acquitted of all

5.

Accordingly, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing, and the government has failed to provide a prompt post-deprivation hearing that comports with due process. *See Munaf*, 553 U.S. at 693; *see also Lopez Alonza v. Warden*, No. 1:26-cv-3059-DJC-JDP, 2026 WL 2390826, at *5 (E.D. Cal. Aug. 17, 2026), *report and recommendation adopted*, 2026 WL 2446693 (E.D. Cal. Aug. 20, 2026). Border Patrol agents released petitioner into the United States after running criminal history and background checks which revealed nothing of concern, allowing them to determine that petitioner was not a threat to national security, border security, or public safety. ECF No. 7-1 at 5-6. After his release into the United States, petitioner filed an asylum petition. *See* ECF No. 7-3 at 4. Petitioner "worked to support himself, paid taxes, and lived openly and peacefully in the community." ECF No. 1 at 6.

Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 245-641-474) from their custody on the same conditions as prior to his detention. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or

---

criminal charges through the procedural protections provided in the underlying criminal proceedings, that provision would be unconstitutional as applied to [p]etitioner."); *Singh v. Chestnut*, No. 1:26-cv-0546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) ("As [p]etitioner notes, however, requiring mandatory detention because of a mere arrest for which prosecutors concluded they did not have sufficient evidence to charge [p]etitioner with a crime, raises serious due process concerns.").

danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 24, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE